(98 App. Div. 420)

### KINSEY v. MEANEY et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. STOCKBROKERS—MARGINS—CONVERSION—CONTRACTS—CONSTRUCTION.

> A contract between plaintiff and defendants for the purchase and sale of stocks provided that, to secure defendants against default, plaintiff would keep deposited with defendants, or to their credit, a sum sufficient for such security at all times, and that all moneys so deposited should be held by defendants as security, etc. As plaintiff ordered the sale or purchase of stocks by defendants, he stated the margin to be put up on each transaction, and each day an account was made between the parties, wherein plaintiff was charged with the margins and any other sums due from him, and was credited with the avails of closed transactions, and with any payments or other items of credit. A balance was struck, and paid to the party in whose favor it appeared to be. *Held*, that such course of dealing established that the margins so deposited were paid into an ordinary current account, and did not constitute a fiduciary or trust fund, which could be made the subject of a conversion.

2. SAME—PRINCIPAL AND AGENT—ACTIONS—UNDISCLOSED PRINCIPAL.

Where plaintiff made purchases and sales of stocks on margins for customers through defendants, the fact that plaintiff was indebted as principal to defendants on such transactions did not preclude them from maintaining an action against one of plaintiff's clients who was indebted to plaintiff, and through him to defendants, for losses, as an undisclosed principal.

3. SAME—COMPROMISE AND SETTLEMENT.

Plaintiff, a stockbroker, executed purchases and sales through defendants, who were engaged in the same business. Prior to defendants' failure, plaintiff was indebted to defendants on two accounts—one for a loss of $1,443.75, which had not been made good by one of plaintiff's customers, and on an account for $583.30. Plaintiff, being unable to pay, defendants arranged that he should continue business on payment of the $583.30, and that defendants would endeavor to collect the other account from the client. *Held*, that such arrangement did not constitute a compromise and settlement precluding defendant from thereafter claiming the right to hold plaintiff for the entire account.

Appeal from Special Term, Genesee County.

Action by Russell L. Kinsey against John F. Meaney and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William F. Mackey, for appellants.

William E. Webster, for respondent.

HISCOCK, J. This action was brought and judgment recovered for the alleged conversion of certain moneys. We think that the judgment must be reversed for various errors committed by the referee, and especially for the reason that no conversion of funds was established.

During the years 1901 and 1902 plaintiff was a stockbroker having his office in Batavia, and the defendants were stockbrokers having their office in Buffalo. Upon substantially every business day from July 13, 1901, to August 29, 1902, plaintiff was accustomed by telegram to order the purchase or sale of stocks through defendants. These transactions appear to have been undertaken by the former in behalf of certain clients of his, but he was responsible as principal to the defendants. No question is presented to us upon this appeal but that the orders in question were genuine, and were not gambling transactions. In connection with them, plaintiff deposited certain sums of money as margins. Upon the date last above mentioned, defendants suspended. It is claimed that at that time certain transactions in behalf of plaintiff had not been closed and terminated by the defendants, and that the margins which the former had deposited with the latter on account of said transactions amounted to $1,360, upon which, concededly, $89.24 has been paid, leaving a balance of $1,270.76. Plaintiff insisted that this amount was held by the defendants as a security and fiduciary fund, and, upon defendants' refusal to comply with his demand and repay the same, this action was brought for conversion, and in which, as before stated, the referee has allowed judgment.

Defendants urge upon this appeal, as they did upon the trial, that there was a certain offset to this claim, and that any balance due from them constituted an ordinary contract indebtedness. Plaintiff's theory is based upon certain clauses in what may be assumed to have been an agreement between the parties. Those clauses, so far as material, are as follows:

"Second. That to secure the said firm of J. F. Meaney & Co. against any default on my [plaintiff's] part in carrying out any contract or contracts for the purchase or sale of any commodity, I will keep deposited with said J. F. Meaney & Co. or to their credit with and in some good bank (to be selected by them), a sum of money sufficient for such security at all times. * * * Fifth. That all moneys deposited by me as aforesaid upon purchases or sales or upon contracts for purchase or sale, as aforesaid, shall be held by the said firm of J. F. Meaney & Co., as security," etc.

While perhaps this language, viewed and construed simply by itself, might give some effect to plaintiff's claim, we think that the acts of the parties under it, whether they be treated as a practical construction of the contract, or as a waiver of some of its features, lead to an interpretation of the relations between the parties which overthrows plaintiff's contention, and sustains that of the defendants. As plaintiff ordered the sale or purchase of stocks by defendants, he stated the margin to be put up on each transaction. Each day an account was made up between the parties, wherein plaintiff was charged with the margins and any other sums due from him, and in which he was credited with the avails of any transactions which were closed out that day, and with any payments or other items of credit. Upon this account a balance was struck, and a statement thereof sent to the plaintiff. If the balance was in favor of plaintiff, a check was transmitted to him. If it was against him, in accordance with the understanding between the parties, he made a deposit to the credit of defendants in a certain bank in Batavia. As stated, this usually occurred each day, but sometimes the account was allowed to run for two or three days. It seems to us pretty clear that the result of this course of dealing was to establish an ordinary current account between the parties, into which was passed, amongst other things, to the credit of plaintiff, these sums which he deposited for margins, and that it was not the intention or expectation of the parties that such margins should be preserved as in any sense a fiduciary or trust fund. Moreover, this practical construction adopted by the parties seems to have been a perfectly natural one, and to have satisfied a fair interpretation of the written contract to which our attention has been called. The sums paid by plaintiff to defendants were credited against and applied upon various stocks bought and sold, and in this way, and to the amount of such credit, they became a margin and security to defendants against responsibility and loss if the stocks sold should go up, or those purchased should go down. In this manner plaintiff's deposits were utilized in a practical business way in the dealings between the parties, and still satisfied the requirements of the contract that they should be a security to the defendants against loss upon the transactions undertaken for the plaintiff.

To our view, there is another obstacle in the way of plaintiff's recovery. He says that the amount mentioned had been deposited as margins upon certain transactions which were not closed out at the time of defendants' suspension. It appears to be assumed, and not in any way contradicted, that defendants, in these transactions, in accordance with the authority and orders of the plaintiff, had bought or sold stocks as his agents, and that, even upon his theory, they were entitled to hold these margins as security for these transactions. It is not shown whether at the time of the suspension, or of the subsequent demand made upon defendants, these transactions had resulted in a loss or gain. So far as is disclosed, defendants, in the execution of the agency conferred upon them, may have suffered losses which more than exhausted the margins in question. We think it was incumbent upon plaintiff, even under his version, when he sought to recover these sums, to show that the transactions undertaken by the defendants in connection with and upon the faith of them were in such shape that the margins had not been exhausted, but were still due to him upon a closing out of the transactions.

We think another error was made upon the trial. At a certain date prior to the suspension plaintiff had concededly become indebted to defendants in the sum of $1,145.75 upon a stock transaction undertaken for a client of his. He was also indebted in the additional sum of $583.33. Plaintiff's client defaulted to him upon the transaction, and plaintiff was unable or unwilling to pay to defendants the amount due thereon. Under such circumstances, the defendants said they would forgive the indebtedness of $1,-145.75, upon payment to them of the balance over and above that amount, and plaintiff now urges that that was a legal settlement and cancellation of the larger item due from him. In support of his claim it is suggested that defendants were to have the privilege of trying to collect from plaintiff's client the amount due, and also that plaintiff, in consideration of the forgiveness of this indebtedness, was to continue his business. The final evidence upon this subject, however, as given by plaintiff, is as follows:

"These copper deals [the one involved] were for a client of mine, and he laid down on me. That was the amount required to make the margins good up to that date, and I could not get the money, and Mr. Meaney came down to see me about that money. Q. And he said: 'You better continue business along, and we may be able to get this money out?' A. He said he would continue business. The fact was, according to this statement, the last statement shows, 'Due us on A. C. $1,223.75,' credited 'amount upon A. C. 80.' 'Due us on A. C. $1,443.75.' And in addition I owed $583.30, but that says, 'Due us,' and that is the final settlement. I made efforts to get the money afterwards for Mr. Meaney. I made some investigations. I cannot say I really tried to get it. I simply investigated as to whether there was any chance to get it, and gave it up. The only thing I really did was to pay the defendants $583.30, the money that I did get. That is the way I settled that account, and that was the consideration for it. There was no other."

While plaintiff was indebted as principal to defendants, the latter undoubtedly had a right of action against plaintiff's client, as an undisclosed principal. At any rate, there was nothing in defendants' suggestion of trying to collect this account from the orig-

inal client which operated as such a substitution of the responsibility of a third party as relieved plaintiff.   Neither, in our opinion, was there any such obligation incurred by plaintiff about continuing his business upon the faith of the forgiveness· of this indebtedness as furnished a valid consideration for such forgiveness.   It seems to us that, merely as a matter of good will, and perhaps encouragement, defendants agreed to forbear the collection of this valid indebtedness, and that this was not sufficient to make a legal and binding settlement of it.

While the referee allowed evidence of this counterclaim or offset upon the trial, and found against it upon the theory of a settlement, it is urged upon this appeal that it would be improper .to allow evidence thereof as against plaintiff's claim, which was ·founded in tort.   In view of the conclusion which we have reached —that plaintiff's cause of action is in contract, and not in tort—it becomes unnecessary to consider whether defendants' offset did not so spring out of the same transactions as plaintiff's claim as to be a proper subject for consideration, even though the latter's claim was in tort.   These views lead to a reversal of the judgment and the granting of a new trial.

Judgment reversed and new trial granted, with costs to appellant to abide event.   All concur.